**FILED**
**Jul 30, 2025**
**01:49 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**IN THE COURT OF WORKERS' COMPENSATION CLAIMS**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **STEPHANIE WALLS,** | ) | **Docket No. 2023-03-01970** |
| **Employee,** | ) | |
| **v.** | ) | |
| **BLUE RIDGE FAMILY** | ) | **State File No. 43437-2021** |
| **DENTISTRY,** | ) | |
| **Employer,** | ) | |
| **And** | ) | |
| **ACCIDENT FUND INSURANCE** | ) | **Judge Lisa A. Lowe** |
| **COMPANY OF AMERICA,** | ) | |
| **Carrier.** | ) | |

---

### COMPENSATION ORDER GRANTING BENEFITS

---

Stephanie Walls sustained a head injury when a lathe fell and struck her. She seeks permanent total disability benefits. For the reasons below, the Court holds that Ms. Walls is entitled to permanent total disability benefits.

### History of Claim

Ms. Walls worked as a lab assistant for Blue Ridge Family Dentistry. On May 12, 2021, a lathe fell and struck her head. She received medical care at the hospital where the diagnoses were a concussion and traumatic brain injury. Restrictions assigned were computer and administration duties only.

Two days later, Ms. Walls returned for treatment, complaining of dizziness, being off balance, and having trouble focusing. She was referred to neurologist/concussion specialist, Dr. Larry Gibson, and he agreed with the concussion and acute post-traumatic headache diagnoses. Dr. Gibson referred Ms. Walls to optometrist Dr. Bruce Gilliland who ordered prism glasses with transition lenses.

Between August 2022 and August 2023, Ms. Walls attempted to return to work with a restriction of working only 10 hours a week while taking frequent breaks. She taught one

1

class at Maryville college but did not think she could continue doing so. She also tried teaching at an art camp but was overwhelmed and had to quit. Because of her work difficulties and mental limitations, Dr. Gibson took her completely off work.

In his first deposition on January 4, 2024, Dr. Gibson said that concussion patients "typically reach MMI six months to a year after the injury." Since he first evaluated Ms. Walls in July 2021, he acknowledged she could have reached MMI by July 2022. He explained that Ms. Walls's residual problems are limited to post-traumatic headaches, and that the AMA Guides address such headaches in Table 3-1, which limits whole-person impairment at 3% even if every question is answered "extreme."

Six weeks after his first deposition, without reexamining her or reviewing any new clinical data, Dr. Gibson executed a C-30A assigning Ms. Walls a 10% impairment rating and set MMI as February 22, 2024.

During his second deposition on November 21, 2024, he explained that the higher rating came from AMA Guides Table 13-8, which addresses mental-status, cognitive, and highest-integrative-function deficits (MSCHIF). However, he admitted that he did not perform a detailed mental-status examination, or obtain neuropsychological testing, EEG, MRI, or other objective studies, each a prerequisite the Guides require for a valid MSCHIF rating. Dr. Gibson further acknowledged that Ms. Walls's clinical presentation had not changed since July 2022.

Blue Ridge argued that Dr. Gibson changed the MMI date and rating, even though he admitted that nothing changed, and did not revaluate Ms. Walls between the first and second deposition. It asserted that all of Ms. Walls's objective testing was normal and that her symptoms could easily have arisen from her preexisting anxiety and depression. Blue Ridge noted Dr. Gibson signed the physician's certification form but asserted that he did not know Ms. Walls's job duties.

Vocational expert Dana Stroller testified that Ms. Walls is 100% vocationally disabled based on Dr. Gibson's limitations/restrictions.

## Findings of Fact and Conclusions of Law

Ms. Walls has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). She must prove by a preponderance of the evidence that she is entitled to the requested benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2024).

The parties agree that Ms. Walls sustained a work-related injury. The disputed issue is the extent of her permanent impairment and vocational disability.

The Court acknowledges that Dr. Gibson's testimony raises questions. In his first deposition, Dr. Gibson said Ms. Walls could have reached maximum medical improvement (MMI) in July 2022 with a likely impairment rating of 3%. In his second deposition, without reexamining her or reviewing new data, he said she reached MMI on February 20, 2024, and assigned her a 10% impairment rating. However, he did not perform any additional testing or evaluation to support the 10% rating. Dr. Gibson executed a physician's certification form stating she could not return to her pre-injury employment, but he did not have Ms. Wall's job duties. He also assigned restrictions on her work hours, her degree of stress, and her work environment.[1]

Blue Ridge argued that Dr. Gibson's earlier MMI date and lower impairment rating are correct. It also asserted that Ms. Walls's symptoms could be related to preexisting depression/anxiety or a brain injury from when she was thirteen years old.

However, Blue Ridge did not offer a medical opinion to rebut Dr. Gibson. Nor did they provide a vocational opinion to rebut Ms. Stoller. "Parties and their lawyers cannot rely solely on their own medical interpretations of the evidence to successfully support their arguments." *Lurz v. Int'l Paper Co.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 8, at *16 (Feb. 14, 2018).

### *Permanent Total Disability*

Ms. Walls seeks permanent total disability benefits. When an employee's disability from a work-related injury is found to be permanent, the employee is entitled to permanent disability benefits based on the degree of vocational disability caused by the injury. *Braden v. Mohawk Ind., Inc.*, 2022 TN Wrk. Comp. App. Bd. LEXIS 11, at *21-22 (Mar. 1, 2022) (internal citations omitted). An employee may be found permanently and totally disabled when the work injury "totally incapacitates the employee from working at an occupation that brings the employee an income." *Id.*

In assessing an employee's permanent vocational disability caused by a work injury, the court can consider several factors, including the employee's medical impairment, job skills, education, age, training, "job opportunities in the immediate and surrounding communities, and the availability of work suited for an individual with that particular disability." *Id.* (internal citations omitted). An employee's own assessment of his or her overall physical condition, including the ability or inability to return to gainful employment, "is competent testimony that should be considered." *Id.* (internal citations

---

[1] Ms. Walls attempted to introduce a neuropsychological testing report and letter from Dr. Ryan Boddy. Blue Ridge objected. The Court marks the report and letter from Dr. Boddy for identification purposes only because Dr. Gibson did not rely on the report and letter at the time he placed Ms. Walls at MMI and rated her, and because Blue Ridge did not have the opportunity to cross-examine Dr. Boddy. However, Dr. Gibson's testimony about limitations/restrictions is allowed because Blue Ridge had the opportunity to cross-examine him at his deposition.

omitted).  The extent of an employee's vocational disability is a question of fact to be determined from both lay testimony and medical evidence.  *Id*.

Here, Dr. Gibson placed Ms. Walls at maximum medical improvement and imposed limitations/restrictions.  Vocational expert Dana Stoller conducted a transferable-skills analysis and labor-market survey and concluded that the combination of Ms. Walls's age, her cognitive limitations, and her limitations/restrictions results in a 100% loss of access to the local, regional, and national labor markets; no job exists that she can perform with reasonable reliability or productivity.

The Court must credit the testimony of Dr. Gibson and Ms. Stoller because Blue Ridge did not offer rebutting expert testimony of either.

Accordingly, even with an impairment of only three percent, all relevant statutory factors including, age, education, work history, local job opportunities, and credible medical and vocational evidence, establish that Ms. Walls is totally incapacitated from working at an occupation that brings her an income.  She is, therefore, entitled to permanent total disability benefits.

## *Benefits*

Ms. Walls was born on September 9, 1969. She will reach the age of full Social Security retirement on September 9, 2036. She is entitled to a weekly benefit of $536.97[2] from her date of MMI, February 22, 2024[3], until September 9, 2036 (655 weeks x $536.97 = $351,715.35).

The Court may award attorney's fees not to exceed twenty percent of the first 450 weeks of an award of permanent total disability, provided the fees are paid by the employee.  A fee of twenty percent is statutorily authorized and customary in cases brought before this Court. Under Tennessee Code Annotated sections 50-6-207(4)(A)(ii)(a) and 50-6-207(4)(A)(iii), the Court commutes twenty percent of the permanent total disability benefits for Ms. Walls's attorney's fee in the amount of $48,327.30. (450 weeks times $536.97 = $241,636.50 x 20% = $48,327.30.)

Additionally, Tennessee Code Annotated section 50-6-207(4)(A)(ii)(c) states:

---

[2] Ms. Walls argued her compensation rate should be $544.35.  She testified that she took leave without pay for "a couple of weeks" due to a hand injury.  However, she did not testify to the specific time period she missed, and the wage statement contained two non-consecutive one-week periods of no pay.

[3] Dr. Gibson mentioned in his first deposition that he typically considers MMI between six months to a year after the injury and that Ms. Walls "*could* have been considered at MMI in July 2022." However, he definitively stated in his second deposition that she reached MMI on February 22, 2024.

4

After the total amount of the commuted lump sum is determined, the amount of the weekly disability benefit shall be recalculated to distribute the total remaining permanent total benefits in equal weekly installments beginning with the date of entry of the order and terminating on the date the employee's disability benefits terminate pursuant to subdivision (4)(A)(i).

Reducing Ms. Walls's total benefit amount by the attorney fee of $48,327.30 yields an adjusted total benefit of $303,388.05, which divided by 655 weeks equals an adjusted weekly compensation rate of $463.18. Blue Ridge shall pay Ms. Walls's permanent total disability benefits at this rate. It shall also pay accrued benefits for the period of February 22, 2024, through July 31, 2025, in lump sum of $34,738.50.

**IT IS, THEREFORE, ORDERED** as follows:

1. Blue Ridge Family Dentistry shall provide medical care for Ms. Walls' injuries as required by Tennessee Code Annotated section 50-6-204 (2024).

2. Ms. Walls is entitled to permanent total disability benefits. Blue Ridge shall pay her accrued benefits from February 22, 2024, to July 31, 2025, in the amount of $34,738.50. Blue Ridge shall also pay ongoing permanent total disability benefits on a weekly or bi-weekly basis until Ms. Walls is eligible for full Old Age Social Security Retirement benefits, and her permanent total disability award is paid in full.

3. Ms. Walls's attorney shall be paid a 20% fee, or $48,327.30, in a lump sum.

4. Blue Ridge Family Dentistry shall by the $150.00 filing fee within five business days of entry of this order, for which execution may issue.

5. Blue Ridge Family Dentistry shall file a Statistical Data Form (SD-2) within 10 business days of entry of this order.

6. Unless appealed, this Order shall become final thirty calendar days after entry.

**ENTERED July 30, 2025.**

_Lisa A. Lowe_____
**JUDGE LISA A. LOWE**
**Court of Workers' Compensation Claims**

5

# APPENDIX

Exhibits:

1. Vocational Assessment and Curriculum Vitae of Dana Stoller
2. Form C-41 Wage Statement
3. Claims Payment Report
4. Lab Photographs
5. AMA Guides Pages 321-333 & 341-343
6. Guides to the Evaluation of Permanent Impairment Pages 40-45
7. Deposition of Stephanie Walls
8. Deposition of Dr. Larry Gibson, January 4, 2024
9. Deposition of Dr. Larry Gibson, November 21, 2024 (with attached exhibits)
10. Medical Report and Letter of Dr. Ryan Boddy, Ph.D. (marked for identification purposes only)

# CERTIFICATE OF SERVICE

I certify that a copy of the order was sent as shown on July 30, 2025.

| Name | Mail | Email | Service sent to: |
|------|------|-------|------------------|
| Timothy A. Roberto, Employee's Attorney | | X | troberto@brownandroberto.com |
| Cole Stinson Employer's Attorney | | X | cole.stinson@afgroup.com |

_Penny Shrum_____
**PENNY SHRUM, COURT CLERK**
**WC.CourtClerk@tn.gov**

6



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s) (Requesting Party):** _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s) (Opposing Party):** _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### Affidavit of Indigency

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____  2. Address: _____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

LB-1108 (REV 11/15)                                                    RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

Groceries    $ _____ per month    Telephone    $ _____ per month

Electricity    $ _____ per month    School Supplies $ _____ per month

Water    $ _____ per month    Clothing    $ _____ per month

Gas    $ _____ per month    Child Care    $ _____ per month

Transportation    $ _____ per month    Child Support    $ _____ per month

Car    $_____ per month

Other    $ _____ per month (describe: _____ )

10. Assets:

Automobile    $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House    $ _____    (FMV) _____

Other    $ _____    Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____